# UNITED STATES DISTRICT COURT
# THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JEREMY SIMMONS-TELEP, individually and on behalf of all others similarly situated, ) ) ) ) | **Cause No.**_____ |
| Plaintiff, ) ) | |
| v. ) ) | **COMPLAINT - CLASS ACTION** <br> **(JURY TRIAL DEMANDED)** |
| ROGER WILLIAMS UNIVERSITY, ) ) ) | |
| Defendants. ) ) | |

Plaintiff Jeremy Simmons-Telep ("Plaintiff") by and through undersigned counsel, brings this action against Roger Williams University ("Defendant" or the "University") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1. Plaintiff brings this case as a result of Defendant's decision to close campus, constructively evict students, and transition all classes to an online/remote format as a result of the Novel Coronavirus Disease ("COVID-19").

2. While closing campus and transitioning to online classes was the right thing for Defendant to do, this decision deprived Plaintiff and the other members of the Class from recognizing the benefits of in-person instruction, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3. Defendant has either refused to provide reimbursement for the tuition, fees and other

1

costs that Defendant is no longer providing, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Class for their loss.

4. This action seeks refunds of the amount Plaintiff and other members of the Class are owed on a pro-rata basis, together with other damages as pled herein.

## PARTIES

5. Defendant Roger Williams University is an institution of higher learning located in Bristol, Rhode Island.

6. Upon information and belief, Defendant is eligible to receive federal stimulus under the CARES Act.  The CARES Act directs that approximately $14 billion be distributed to colleges and universities based upon enrollment and requires that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

7. Plaintiff is an individual and a resident and citizen of the state of Connecticut.

8. Plaintiff is currently enrolled as a full-time student in Defendant's undergraduate program.

9. Plaintiff has paid substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, or otherwise.

10. There are hundreds, if not thousands, of institutions of higher learning in this country.

11. Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which do not provide for physical attendance by the students.

12. Defendant's institution offers in-person, hands-on curriculum.

2

13. Plaintiff and members of the Proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and enroll on an in-person basis.

14. Defendant markets the on-campus experience as a benefit of enrollment, listing student engagement and experiential learning as core University values:[1]



**Core Values**

A Roger Williams University education is:

**Transformative.** We are committed to an expansive student-centered experience, characterized by academic rigor, critical thinking, collaboration and community engagement, that enriches students, the University and the broader society.

**Engaged.** We collaborate with one another and with constituencies outside the University to promote individual learning and to help address community needs.

**Experiential.** We provide an educational environment that bridges theory and practice, enhancing the ability of students to fulfill their potential and to contribute to society.

15. Common sense would dictate that the level and quality of instruction an educator can provide through an online format is lower than the level and quality of instruction that can be provided in person.

16. Moreover, the true college experience encompasses much more than just the credit hours and degrees.  The college experience consists of:

- Face-to-face interaction with professors, mentors, and peers;

- Access to facilities such as computer labs, study rooms, laboratories, libraries;

- Student governance and student unions;

---

[1] https://www.rwu.edu/who-we-are/our-vision

- Extra-curricular activities, groups, intramurals;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands-on learning and experimentation; and

- Networking and mentorship opportunities.

17. Plaintiff's education has changed from in-person, hands-on learning to online instruction.

18. Plaintiff's online instruction is not commensurate with the same classes being taught in person.

19. For example, out of Plaintiff's four classes, only one is currently being taught live over video conference during normal hours.  Another class, which was supposed to meet two times per week, is only meeting once per week.  Plaintiff's remaining classes are being delivered through pre-recorded lectures (some only 15-25 minutes) or, in some instances, with no video instruction at all and with assignments simply being posted for self-study completion.

20. Defendant has already recognized the inherent inequality between the value of in-person and online instruction.

21. Even before the COVID-19 pandemic, Defendant offered an online degree program called its "University College" program.

22. As an initial matter, it is important to note that Defendant only offered certain degrees through its online program, suggesting that not every field of study is even suitable for online learning.

23. Nonetheless, Defendant did offer certain online degrees that were identical to the degrees offered on campus including bachelor's degrees in criminal justice, cyber security &

networking, and management.[2]

24. However, Defendant charged significantly lower tuition for the online degrees than for the same corresponding on-campus degrees.

25. Indeed, prior to the COVID-19 pandemic, Defendant charged $1,527 per standard undergraduate credit hour on campus,[3] and only $433 per identical credit hour online,[4] representing a discount of roughly 72%.

26. In addition to tuition, Plaintiff was required to and did pay certain mandatory fees, including but not limited to a $165 spring semester student activity fee.

27. The student activity fee is a mandatory fee charged to all in-person undergraduate students who first enrolled at the University for the 2019-2020 academic year.[5]

28. Undergraduate students who were returning to the University for the 2019-2020 academic year were not charged the student activity fee, but instead were charged a $1050 "semester fee" and a $140 per semester technology fee.[6]

29. For all graduate students (excluding law students), Defendant charged a Spring 2020 "semester fee" of $450 for full time students and $150 for part time students.[7]

30. For law students, Defendant charges a flat "student fee" of $725 per semester.[8]

31. Defendant advertises the semester fees as, among other things, covering the cost of:[9]

- Student activities, organizations, and clubs;

---

[2] Compare https://www.rwu.edu/undergraduate/academics/programs with https://www.rwu.edu/uc/academics/programs
[3] https://www.rwu.edu/who-we-are/administrative-offices/bursar/tuition-fees-2019-20/2019-2020-undergraduate-new-student-rates
[4] https://www.rwu.edu/uc/admissions/tuition-fees
[5] https://www.rwu.edu/who-we-are/administrative-offices/bursar/tuition-fees-2019-20/2019-2020-undergraduate-new-student-rates
[6] https://www.rwu.edu/who-we-are/administrative-offices/bursar/tuition-fees-2019-20/2019-2020-undergraduate-returning-student-rates
[7] https://www.rwu.edu/who-we-are/administrative-offices/bursar/tuition-fees/graduate-bursar-2019-20
[8] https://law.rwu.edu/student-experience/student-finance-and-records/tuition-and-fees
[9] https://www.rwu.edu/who-we-are/administrative-offices/bursar/resources-forms/faqs-bursar

- Access to sports facilities and use of the recreation center;

- Participation in intramural and recreational programs;

- Educational events and speakers brought on campus;

- Use of health services; and

- Workshops, panel presentations, and events.

32. Defendant advertises the technology fee as covering the cost of such things as campus wireless access, speed and bandwidth.[10]

33. Defendant also charges a number of additional optional and/or access-based fees such as lab fees for certain courses and parking permit charges.[11]

34. As a result of being constructively evicted from campus, Plaintiff and members of the Fees Class no longer have the benefit of the services for which these fees have been paid. For example: student, recreational, and athletic activities have been cancelled; sports facilities and the recreation center have been closed; the University is no longer hosting educational events, campus speakers, workshops, or panel presentations; and students no longer have access to or the need for campus networking and wireless internet infrastructure.

## FACTUAL ALLEGATIONS

35. Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 6, 2020 at the School of Law and January 22, 2020 for the other programs.[12]

36. Upon information and belief, Defendant's Spring term was scheduled to conclude with

---

[10] Id.
[11] Plaintiff paid $92.50 for his Spring 2020 parking permit.
[12] http://catalog.rwu.edu/content.php?catoid=4&navoid=156&_ga=2.71882513.347701501.1589833562-2015778614.1589833562

the last day of examinations on or about May 13, 2020 for all programs, and commencement on May 15-16, 2020.[13]

37. Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 121 days.

38. Defendant's Spring break began on or about March 7, 2020 and was supposed to end on or about March 15, 2020, with students returning for in person classes on Monday, March 16, 2020.[14]

39. However, as a result of the COVID-19 pandemic, Defendant announced on March 10, 2020 that it was extending Spring Break by one week, and moving all classes online upon the conclusion of the extended Spring Break.[15]

40. The following day, on March 11, 2020, Defendant announced that it was cancelling all student organization travel and all University events with 50 or more attendees.[16]

41. Students were instructed not to return to campus, and most "non-essential" campus facilities were closed.

42. Students living on campus were required to vacate their dormitories absent exceptional circumstances.

43. Accordingly, Plaintiff and members of the Tuition Class were deprived of a full week of instruction of any format.

44. Likewise, although Defendant is now offering some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class have been and will be deprived of the benefits of on-campus learning as set forth more fully above.

---

[13] Id.
[14] Id.
[15] https://www.rwu.edu/node/192881/rwu-covid-19-update
[16] https://www.rwu.edu/node/192881/rwu-covid-19-update-0

45. However, Defendant has refused and continues to refuse to offer any pro-rated discounts or refunds on Spring 2020 tuition:[17]

> **Is the university crediting any tuition?**
>
> These are extraordinary times and the global pandemic, and the rapid rate at which it has evolved, made this a very difficult decision-making environment. While all of us – our students, faculty and staff – would prefer to be together, on-campus, the COVID-19 pandemic makes that impossible for the safety and welfare of our entire community. We have worked to deliver the high-quality educational experience you've come to expect from RWU at this time. The University is not prorating tuition as students are still earning transcripted credit. We continue to provide an enriching experience for our students.

46. Moreover, Plaintiff and members of the proposed Fees Class have been and will be deprived of utilizing services for which they have already paid, such as access to campus facilities, and other opportunities, as set forth more fully above.

47. However, Defendant has refused and continues to refuse to offer any pro-rated discounts or refunds on Spring 2020 fees – even parking fees:[18]

> **Is the university crediting any other fees?**
>
> There will be no refund or credit for mandatory fees paid in Spring 2020, such as medical insurance, activity fees, semester fees, lab fees or parking permits.

48. This decision to not discount stands in contrast to Defendant's prior course of conduct and acknowledgements.

49. Upon information and belief, Defendant does not and has never charged the full "semester fee" or any activity or technology fees to its fully online students.

50. Whereas Defendant charges semester fees of between $450 and $1050 for its on-campus students, prior to the COVID-19 pandemic, it charged only $70 in semester fees for its fully online students,[19] a recognition that students not physically present on campus are

---

[17] https://www.rwu.edu/who-we-are/administrative-offices/bursar/housing-and-meal-plan-credits
[18] Id.
[19] https://www.rwu.edu/uc/admissions/tuition-fees

not afforded access to or the benefit of most of the things such fees are intended to cover.

## JURISDICTION AND VENUE

51. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

52. This Court has personal jurisdiction over Defendant because Defendant is domiciled in Rhode Island and conducts business in Rhode Island.

53. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is a corporate body domiciled and doing business in this District.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> **The Tuition Class:**
>
> All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.
>
> **The Fees Class:**
>
> All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

55. Excluded from the Classes are The Board of Trustees of Roger Williams University (or similar governing body) and any of their respective members, affiliates, parents,

9

subsidiaries, officers, directors, employees, successors, or assigns; and the judicial

officers, and their immediate family members, and Court staff assigned to this case.

Plaintiff reserves the right to modify or amend the Class definitions, as appropriate,

during the course of this litigation.

56. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff

can prove the elements of his claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims.

57. This action has been brought and may be properly maintained on behalf of the Class

proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

58. The members of the Class are so numerous and geographically dispersed that individual

joinder of all Class members is impracticable.  Plaintiff is informed and believes there are

thousands of members of the Class, the precise number being unknown to Plaintiff, but

such number being ascertainable from Defendant's records.  Upon information and belief,

Defendant's current enrollment is roughly 4,500 students.  Class members may be

notified of the pendency of this action by recognized, Court-approved notice

dissemination methods, which may include U.S. mail, electronic mail, internet postings,

and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

59. This action involves common questions of law and fact, which predominate over any

questions affecting individual Class members, including, without limitation:

- Whether Defendant engaged in the conduct alleged herein;

- Whether there is a difference in value between online distance learning and live

in-person instruction;

- Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and live in-person instruction;

- Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and live in-person instruction;

- Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services the fees were intended to cover;

- Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services the fees were intended to cover;

- Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

- Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

- The amount and nature of relief to be awarded to Plaintiff and the other Class members.

### **Typicality: Fed. R. Civ. P. 23(a)(3)**

60. Plaintiff's claim is typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through

Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

61. Plaintiff is an adequate Class representative because his interests do not conflict with the interests of other members of the Class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex litigation; and Plaintiff intends to prosecute the action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

62. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

63. Even if Class members could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

64. To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3),

Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

65. The University has acted or refused to act on grounds generally applicable to Plaintiff and

the other Class members, thereby making appropriate final injunctive relief and

declaratory relief, as described herein, with respect to the Class members as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION
BREACH OF CONTRACT
(Plaintiff and Other Members of the Tuition Class)**

66. Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

67. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

68. Plaintiff and the Tuition Class entered into contracts with the University which provided

that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of

students and, in exchange, the University would provide live in-person instruction in a

physical classroom.

69. Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when

they paid tuition for the Spring 2020 semester either out-of-pocket or by using student

loan financing, or otherwise.

70. The University breached the contract with Plaintiff and the Tuition Class by moving all

classes for the Spring 2020 semester to online distance learning platforms, without

reducing or refunding tuition accordingly.

71. The University retained tuition monies paid by Plaintiff and other members of the Tuition

Class, without providing them the full benefit of their bargain.

72. Plaintiff and other members of the Tuition Class have suffered damage as a direct and

proximate result of Defendant's breach, including but not limited to being deprived of the value of the services the tuition was intended to cover, namely live in-person instruction in a physical classroom.

73. As a direct and proximate result of Defendant's breach, Plaintiff and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the difference between the value of the online learning which is being provided versus the value of the live in-person instruction in a physical classroom that was contracted for.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Plaintiff and Other Members of the Tuition Class)

74. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

75. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

76. This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the First Cause of Action above.

77. The University has received a benefit at the expense of Plaintiff and other members of the Tuition Class to which it is not entitled.

78. Plaintiff and other members of the Tuition Class paid substantial tuition for live in-person instruction in physical classrooms and did not receive the full benefit of the bargain.

79. Plaintiff and other members of the Tuition Class conferred this benefit on Defendant when they paid the tuition.

80. Defendant has realized this benefit by accepting such payment.

81. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

82. Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

83. Defendant should be required to disgorge this unjust enrichment.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiff and Other Members of the Fees Class)

84. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

85. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

86. Plaintiff and the Fees Class entered into contracts with the University which provided that Plaintiff and other members of the Fees Class would pay certain fees for or on behalf of students and, in exchange, the University would provide services related to those fees, such as access to student activities, athletics, wellness centers, libraries, etc.

87. Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out-of-pocket or by using student loan financing, or otherwise.

88. The University breached the contract with Plaintiff and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, and closing most campus buildings and facilities, without reducing or refunding fees accordingly.

89. The University retained fees paid by Plaintiff and other members of the Fees Class,

without providing them the full benefit of their bargain.

90. Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the benefits and services the fees were intended to cover.

91. As a direct and proximate result of Defendant's breach, Plaintiff and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that was collected but for which services were not provided.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Fees Class)**

92. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

93. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

94. This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the Third Cause of Action above.

95. The University has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

96. Plaintiff and other members of the Fees Class paid substantial student fees for on-campus benefits and services and did not receive the full benefit of the bargain.

97. Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

98. Defendant has realized this benefit by accepting such payment.

16

99. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the fees were collected, making Defendant's retention unjust under the circumstances.

100.     Equity and good conscience require that the University return a pro-rata portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

101.     Defendant should be required to disgorge this unjust enrichment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

a.     Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

b.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

c.     Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

d.     Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

e.     Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

f.     Scheduling a trial by jury in this action;

g.     Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

h.      Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law; and

i.       Awarding such other and further relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated May 21, 2020

**CARON LAW OFFICE**

/s/ *Robert J. Caron*
Robert J. Caron, Esquire
Bar No.: 5735
478A Broadway
Providence, Rhode Island 02909
P: (401) 621-8600
Email: rjcaron@robertjcaronlaw.com

-AND-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin**
Roy T. Willey, IV**
32 Ann Street
Charleston, SC 29403
P: (843) 614-8888
Email: eric@akimlawfirm.com
         roy@akimlawfirm.com

-AND-

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN, LLP**
John M. Bradham**
Peter B. Katzman**
444 Madison Ave., 4th Floor
New York, NY 10022
P: (212) 695-8050
Email: jbradham@msbllp.com
         pkatzman@msbllp.com

** *Pro Hac Vice Application Forthcoming*

**ATTORNEYS FOR PLAINTIFF(S)**

18